UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No. 08-13555<br>(JMP) (Jointly Administered) |
| VEYANCE TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>-v-<br><br>LEHMAN BROTHERS SPECIAL FINANCING, INC. | Case No. 1:09-cv-08851-BSJ<br><br><br>Adv. Proc. No. 09-01535 (JMP) |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
<u>EXPEDITED MOTION FOR WITHDRAWAL OF THE REFERENCE</u>**

ORAL ARGUMENT REQUESTED

Latham & Watkins LLP
885 Third Avenue
Suite 1000
New York, New York  10022
(212) 906-1200
Attorneys for Veyance Technologies, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ii

PRELIMINARY STATEMENT .........................................................................................................1

ARGUMENT .........................................................................................................................................2

    I.     THE DISTRICT COURT SHOULD DECIDE WHETHER THE DECLARATORY JUDGMENT ACTION IS CORE OR NON-CORE...................2

    II.    VEYANCE'S ADVERSARY PROCEEDING DOES NOT RAISE ANY CORE ISSUES ...........................................................................................................4

    III.   WITHDRAWING THE REFERENCE WILL PROMOTE JUDICIAL ECONOMY ...........................................................................................................8

REQUEST FOR ORAL ARGUMENT ................................................................................................9

CONCLUSION.....................................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                                                                                      **PAGE(S)**

*176-60 Union Turnpike, Inc. v. Howard Beach Fitness Center,*
209 B.R. 307 (S.D.N.Y. 1997) ..................................................................................................3

*1115 Third Avenue Rest. Corp. v. New York Life Insurance Co. (In re 1115 Third Avenue Rest. Corp.),*
No. 98 Civ. 4007, 2000 WL. 1346824 (S.D.N.Y Sept. 19, 2000) .......................................7

*Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works),*
815 F.2d 165 (1st Cir. 1987) ..................................................................................................7

*Ben Cooper, Inc. v. Insurance Co. of State of Pa. (In re Ben Cooper, Inc.),*
896 F.2d 1394 (2d. Cir. 1990) ...............................................................................................7

*Enron N. America Corp. v. Random House, Inc. (In re Enron Corp.),*
No. 03 Civ. 9312, 2007 WL 102085 (S.D.N.Y. Jan. 12, 2007) .........................................8, 9

*Enron Power Marketing, Inc. v. City of Santa Clara (In re Enron Corp.),*
No. 01 Civ. 7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) .............................................8, 9

*Enron Power Marketing, Inc. v. Holcim, Inc. (In re Enron Corp.),*
No. 04 Civ. 509, 2004 WL 2149124 (S.D.N.Y. Sept. 23, 2004) ..........................................9

*In re FMI Forwarding Co.,*
No. 00 B. 41815, 2004 WL 1348956 (S.D.N.Y. June 16, 2004) ..........................................3

*In re Loral Space and Communications,*
No. 03-41710, Adv. 04-0255, 04 Civ. 04547,
2004 WL 1586466 (S.D.N.Y. July 14, 2004) .......................................................................9

*In re The VWE Group, Inc.,*
359 B.R. 441 (S.D.N.Y. 2007) ..............................................................................................3

*In re United Lines, Inc.,*
197 F.3d 631 (2d Cir. 1999) ..................................................................................................7

*Interconnect Telephone Services, Inc. v. Farren,*
59 B.R. 397 (S.D.N.Y. 1986) ................................................................................................3

*JPMorgan Chase Bank v. Charter Communications Holdings, LLC (In re Charter Communications),*
409 B.R. 649 (Bankr. S.D.N.Y. 2009) ..................................................................................7

*JT Moran Financial Corp. v. American Consolidated Financial Corp. (In re JT Moran Financial Corp.)*,
124 B.R. 931 (S.D.N.Y. 1991)..................................................................................................7

*Northwest Airlines, Inc. v. Los Angeles (In re Northwest Airlines Corp.)*,
384 B.R. 51 (S.D.N.Y. 2008)................................................................................................3, 4

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,
458 U.S. 50 (1982)..............................................................................................................1, 6, 7

*Oakley v. Drydock Coal Co.*,
No. 2:06-cv-556, Adv. Proc. No. 05-2289, 2007 WL 710244 (S.D. Ohio Mar. 6, 2007).............7

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
4 F.3d 1095 (2d Cir. 1993)...................................................................................................2, 7

*Schneider v. Riddick (In re Formica Corp.)*,
305 B.R. 147 (S.D.N.Y 1985)..................................................................................................9

## STATUTES

11 U.S.C. § 365(B)(1)(A)-(C)....................................................................................................5

28 U.S.C. § 157(b)(3)................................................................................................................3

28 U.S.C. § 157(c)(1)................................................................................................................8

28 U.S.C. § 157(d)....................................................................................................................3

## OTHER AUTHORITY

1-365 *Collier Bankruptcy Manual*, 3d ed. Revised P 365.02.......................................................5

## **PRELIMINARY STATEMENT**

LBSF's Response to Veyance's Expedited Motion for Withdrawal of the Reference (the "Opposition") seems an exercise in confusion. It conflates the indisputably non-core issue in Veyance's declaratory judgment action – about the existence of a contract under state law – with hypothetical bankruptcy issues that do not and cannot arise now, but rather can only arise if an Article III court decides that a contract exists. And it conflates Veyance's action, about the existence of a contract, with the swap disputes before the Bankruptcy Court, which do not concern existence of a contract, but rather concern enforceability of admittedly valid contracts.

The first step in the withdrawal analysis is deciding whether Veyance's narrow declaratory judgment action, about the single issue of whether a swap contract exists, is core. There is no dispute that this single issue is purely a state law issue. (Def.'s Opp'n Br. at 11.) Veyance is thus constitutionally entitled to have an Article III court (and jury) decide this issue. The determination of whether a contract exists does not raise any Bankruptcy Code issues, and requires no special bankruptcy expertise. For example, despite LBSF's lengthy discussion of Section 365, Veyance's action does not raise any Section 365 issues because there is nothing to assume or reject until an Article III court decides whether a contract exists.

Unable to deny this, LBSF instead dreams up a hypothetical new adversary proceeding, which LBSF might bring in the future if it prevails in this declaratory judgment action, and which might involve core bankruptcy issues such as assumption under Section 365. But this is utterly irrelevant in deciding the first step of the withdrawal analysis, whether Veyance's claim is core. LBSF's hypothetical future proceeding is also purely speculative, as it admittedly may never be brought. Moreover, even if brought, it may be non-core under *Northern Pipeline*, since in substance it would be a breach of contract action seeking specific

1

performance, and indeed LBSF admits it may never involve bankruptcy code issues. (Def.'s Opp'n Br. at 15.)

Regarding the second step of the withdrawal analysis – judicial efficiency – LBSF's only argument is that there are other swap proceedings already before the Bankruptcy Court. Indeed there are. But these proceedings bear no resemblance to Veyance's claim. Those other swap proceedings involve the enforceability under the Bankruptcy Code of admittedly valid swap contracts; none of them involve deciding whether the swap contract exists. There is no efficiency to be gained from having the Bankruptcy Court decide Veyance's entirely unrelated claim, and instead only inefficiency and delay result from having Veyance's entirely non-core state law issue litigated there, and then relitigated here as it must be. The desire for preliminary guidance before the first payment would be due on December 11, 2009 also favors withdrawal. Finally, the fact that the Bankruptcy Court cannot handle the Article III jury trial to which Veyance is entitled (which LBSF does not dispute) further weighs in favor of withdrawal.

For all of these reasons, the reference should be withdrawn.

## ARGUMENT

### I. THE DISTRICT COURT SHOULD DECIDE WHETHER THE DECLARATORY JUDGMENT ACTION IS CORE OR NON-CORE

LBSF is wrong that this Court must defer deciding the withdrawal motion until the Bankruptcy Court makes a core/non-core determination.

First, as LBSF concedes, many courts in the Southern District routinely decide whether a proceeding is core or non-core, pursuant to the Second Circuit's instruction: "A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core . . . ." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993). Indeed, the "majority rule" in the Southern

2

District allows the district court to make the core versus non-core decision in the first instance. *Northwest Airlines, Inc. v. Los Angeles (In re Northwest Airlines Corp.)*, 384 B.R. 51, 57-60 (S.D.N.Y. 2008) (making core versus non-core determination and withdrawing the reference in action involving contract interpretation issues); *see also In re The VWE Group, Inc.*, 359 B.R. 441, 447-48 (S.D.N.Y. 2007) ("[The Second Circuit's] clear language refutes plaintiff's contention that the core/non-core determination must be made by a bankruptcy judge.") (quoting *Orion*, 4 F.3d at 1101); *In re FMI Forwarding Co.*, No. 00 B. 41815, 2004 WL 1348956, at *6 n.5 (S.D.N.Y. June 16, 2004) ("[T]he courts of this Circuit have ruled time and time again that, in the context of a withdrawal motion, the district court [in] ruling on such motion does not have to wait for the bankruptcy court to determine whether the claims at issue are core or non-core."); *176-60 Union Tpk., Inc. v. Howard Beach Fitness Ctr.*, 209 B.R. 307, 311 (S.D.N.Y. 1997) (rejecting defendant's "argument that the Bankruptcy Court alone decides whether a proceeding is 'core' or 'non-core.'"); *Interconnect Tel. Servs., Inc. v. Farren*, 59 B.R. 397, 401 n.2 (S.D.N.Y. 1986) ("Plaintiff's suggestion that only the bankruptcy court may classify an action as a core or non-core proceeding does not merit much discussion. . . . It is clear that the district court is empowered to make such a determination."). The Second Circuit issued this instruction because Section 157(b)(3), in granting Bankruptcy Courts authority to decide a motion regarding whether a proceeding is core, nowhere states that this authority is exclusive, or strips District Courts of their authority under Section 157(d) to decide a withdrawal motion.[1]

---

[1] Despite LBSF's assertion that the cases it cites are better reasoned (*see* Def.'s Opp'n Br. at 8) in fact none of them analyze whether the statutory grant of jurisdiction is meant to be exclusive, or attempt to reconcile their holdings with the Second Circuit's instruction in *Orion*.

3

Second, this issue is a red herring because there is no dispute that Veyance's declaratory judgment action is non-core, as discussed below. LBSF's argument is not that Veyance's declaratory judgment action is core, but rather that in the future LBSF might bring a new allegedly core adversary proceeding to enforce the supposed swap contract, and thus it would be more efficient to let the Bankruptcy Court decide both. But this argument goes to the second step in the withdrawal analysis – judicial efficiency – not to the first step of deciding whether Veyance's adversary proceeding is core.[2]

In any event, it makes no sense to delay this withdrawal motion to have the Bankruptcy Court make a core/non-core determination, given that: it is essentially undisputed that Veyance's declaratory judgment action is non-core; the Bankruptcy Court "has no prior familiarity" with this case (*see Northwest Airlines,* 384 B.R. at 57); and given the hope for speedy guidance about whether a contract exists before the first payment would be due under the alleged contract on December 11, 2009.

## II. VEYANCE'S ADVERSARY PROCEEDING DOES NOT RAISE ANY CORE ISSUES

Veyance's adversary proceeding raises a single narrow issue: does a swap contract exist. LBSF tellingly never disputes that this issue is non-core; in fact, it concedes that this issue, "whether a contract was formed, will require the application of New York state law . . . ." (Def.'s Opp'n Br. at 11.) LBSF also tellingly concedes that Veyance's adversary

---

[2] LBSF argues that denying withdrawal will allow the Bankruptcy Court "to treat similarly situated claims in a consistent matter" and "prevent the risk of inconsistent decisions" (Def.'s Opp'n Br. at 9), but there are no similarly situated claims and thus no risk of inconsistent decisions; this is the only case about whether a swap contract exists, as noted below. As to "having the court most familiar with this case decide this critical issue" (*id.*), the Bankruptcy Court has no familiarity with this case, or with the Veyance/LBSF negotiations that determine whether a contract exists.

proceeding does not raise any bankruptcy issues, but rather only "presages" them. (Def.'s Opp'n Br. at 13.) In other words, after Veyance's non-core proceeding is decided by an Article III court, if it results in a determination that a contract exists, then bankruptcy issues might arise about how to handle that contract, but LBSF concedes that none of those issues arise now in this proceeding.[3]

Unable to deny that Veyance's declaratory judgment proceeding itself is non-core, LBSF instead tries distraction, envisioning a hypothetical future adversary proceeding. LBSF imagines the possibility that:

- It might prevail in this declaratory judgment proceeding, resulting in a determination that a swap contract exists;

- Veyance might then decide not to perform;

- LBSF might then bring a contract action for specific performance; and

- Veyance might then choose to raise various bankruptcy-specific defenses, such as whether this is an executory contract that LBSF has the right to enforce under the bankruptcy code.

There are many problems with LBSF's argument.

---

[3] LBSF's extensive discussion of Section 365(a) is thus utterly irrelevant. It is true that, if this Court determines that a contract exists, LBSF might ultimately move to assume or reject, but that is not this proceeding. Under Section 365, a debtor is allowed, subject to bankruptcy court approval, to elect whether to perform, i.e., assume a pre-petition executory contract or reject it. Contracts are generally considered executory if performance remains due by both parties. 1-365 *Collier Bankruptcy Manual*, 3d ed. Revised P 365.02. To assume an executory contract, a debtor must (A) cure, or provide adequate assurance that the debtor promptly will cure, any defaults by the debtor, (B) compensate, or provide adequate assurance that the debtor will promptly compensate, the other party for loss resulting from such defaults, and (C) provide adequate assurance of the debtor's future performance of such contract. 11 U.S.C. § 365(B)(1)(A)-(C). These Bankruptcy Code issues could arise only if a contract exists, and they have nothing to do

First, it is simply irrelevant to this step of the withdrawal analysis – deciding whether Veyance's proceeding is core – to decide whether a different adversary proceeding is core, nor does LBSF cite any case so suggesting.

Second, LBSF's hypothetical future adversary proceeding is entirely speculative, depending on a number of possibilities that may never occur. Initially, Veyance may (and likely will) prevail in the declaratory judgment action. In addition, if instead LBSF prevails, Veyance may decide to perform, depending on any number of considerations. Tellingly LBSF cites to nothing suggesting that Veyance has indicated that it would not perform. Moreover, if in fact Veyance decided not to perform, LBSF may choose not to seek specific performance of the contract, if the interest rates have moved against LBSF. Finally, even if LBSF seeks specific performance, Veyance might not raise the bankruptcy-specific issues that LBSF imagines in its briefing, and instead may rely on state-law defenses, as LBSF concedes. In fact, LBSF concedes that its hypothetical future adversary proceeding is purely speculative:

- "*If and when* the Court rules that a contract between Veyance and LBSF exists, then LBSF *may* have to similarly move to compel performance by Veyance." (Def.'s Opp'n Br. at 13) (emphasis added);
- "Thus, given the *potential* impact . . . ." (*Id.* at 14) (same);
- "[T]here is *no guarantee* that the Bankruptcy Code *will be implicated* . . . ." (*Id.* at 15) (same).

Indeed, if LBSF's argument were correct, that a purely state-law proceeding becomes core merely because in the future a core issue might be raised in a new different proceeding, then any breach of contract case would always be core, in violation of *Northern Pipeline*, because it is always possible that in the future a party might choose to raise a Bankruptcy Code issue.

---

       with the subject of Veyance's complaint – which is to determine under New York state law whether a contract was ever formed in the first place.

6

Third, even if LBSF does bring an adversary proceeding in the future to enforce the alleged swap contract, LBSF's proceeding may well be non-core. As an initial and obvious matter, it is premature if not impossible to decide whether LBSF's adversary proceeding would be core since we do not yet know what it would say, or what defenses would be asserted. Second, LBSF's future adversary proceeding would in substance be a breach of contract claim seeking specific performance. A pre-petition breach of contract claim is exactly what the Supreme Court held was non-core in *Northern Pipeline*. Likewise, in *Orion* the Second Circuit held that an action by the debtor seeking specific performance of a pre-petition contract is non-core. *See Orion Pictures Corp.*, 4 F.3d at 1102. Similarly, the *JT Moran* case LBSF cites holds that a debtor's adversary proceeding seeking to collect on notes issued pre-petition is non-core. *JT Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re JT Moran Fin. Corp.)*, 124 B.R. 931, 938-39 (S.D.N.Y. 1991). At base, LBSF's argument is smoke and mirrors, seeking to distract from the undisputed fact that *Veyance's* declaratory judgment action is entirely non-core.[4]

---

[4] LBSF suggests that Veyance's declaratory judgment action has a "potential impact" on the Section 365 bankruptcy issues of a debtor's assumption and enforcement of a contract (Def.'s Opp'n Br. at 14), but in reality Veyance's action has no impact at all on them – other than to establish whether the contract exists, which is indisputably an Article III non-core proceeding under *Northern Pipeline*. In contrast, in *Oakley* the proceeding brought both core and non-core claims, unlike here. *Oakley v. Drydock Coal Co.*, No. 2:06-cv-556, Adv. Proc. No. 05-2289, 2007 WL 710244, at *2 (S.D. Ohio Mar. 6, 2007). Although LBSF neglects to mention it, the critical fact in *Oakley* was that the adversary complaint brought four fraudulent conveyance Bankruptcy Code claims, and only one ancillary state law issue; thus, the *Oakley* court understandably held that the core issues in the adversary complaint predominated. *Id.* at *1.

The other adversary proceedings LBSF cites all substantially affected the entire bankruptcy proceeding or involved a post-petition debt. *See Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works)*, 815 F.2d 165 (1st Cir. 1987) (recovery of post-petition debt); *1115 Third Ave. Rest. Corp. v. New York Life Ins. Co. (In re 1115 Third Ave. Rest. Corp.)*, No. 98 Civ. 4007, 2000 WL 1346824, at *2 (S.D.N.Y Sept. 19, 2000) (disputed contract was a "principle asset" of debtors estate, contract was sold in the bankruptcy plan, and post-petition breach had occurred); *JPMorgan Chase Bank v. Charter*

### III. WITHDRAWING THE REFERENCE WILL PROMOTE JUDICIAL ECONOMY

Since Veyance's declaratory judgment proceeding is non-core, withdrawing the reference will promote judicial efficiency because otherwise this Court will have to review *de novo* the Bankruptcy Court's recommendations. *See* 28 U.S.C. § 157(c)(1). As a result, this Court will effectively be required to conduct a second trial of Veyance's state-law contract claims. The conservation of judicial resources and the interests of the parties in avoiding multiple litigations over the same issues counsels for withdrawal. Additionally, given the upcoming December 11, 2009 deadline for the first payment under the alleged swap agreement, a speedy determination of the parties' rights counsels in favor of withdrawal to avoid the delay that would accompany two separate adjudications.

In response, LBSF's sole argument is that it would be efficient for the Bankruptcy Court to provide recommendations regarding whether the alleged Veyance swap contract exists, because the Bankruptcy Court is already "adjudicating numerous disputes between LBSF and various other counterparties concerning interest rate swap transactions." (*See* Def.'s Opp'n Br. at 16.) But tellingly and critically, none of these other disputes involve whether a swap agreement exists.[5]

---

*Commc'ns Holdings, LLC (In re Charter Commc'ns)*, 409 B.R. 649, 653 (Bankr. S.D.N.Y. 2009) (relief sought "has the potential to block . . . confirmation of the Debtors' plan of reorganization"); *In re United Lines, Inc.*, 197 F.3d 631, 638-39 (2d Cir. 1999) (interpretation of insurance contract required to ensure equitable treatment of creditors); *Ben Cooper, Inc. v. Ins. Co. of State of Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d. Cir. 1990) (post-petition contract).

[5] LBSF cites seventeen adversary proceedings involving swap contracts. But *none* of those swap counterparties contested the initial existence of a contract. In addition, most of these disputes focus on the termination of the swap transaction or the return of collateral provided under a swap transaction; Veyance's declaratory judgment action raises none of these issues.

8

Moreover, in all of the cases LBSF cites, the Bankruptcy Court had pending or prior proceedings addressing the same issues as in the adversary proceeding. *See Enron Power Mktg, Inc. v. City of Santa Clara (In re Enron Corp.)*, No. 01 Civ. 7964, 2003 WL 68036, at *10 (S.D.N.Y. Jan. 8, 2003); *Enron N. Am. Corp. v. Random House, Inc. (In re Enron Corp.)*, No. 03 Civ. 9312, 2007 WL 102085, at *2 (S.D.N.Y. Jan. 12, 2007); *Enron Power Mktg, Inc. v. Holcim, Inc. (In re Enron Corp.)*, No. 04 Civ. 509, 2004 WL 2149124, at *3 (S.D.N.Y. Sept. 23, 2004); *In re Loral Space & Commc'ns.*, No. 03-41710, Adv. 04-0255, 04 Civ. 04547, 2004 WL 1586466, at *2 (S.D.N.Y. July 14, 2004). In contrast, Veyance's adversary proceeding appears to be the only Lehman proceeding addressing whether a swap contract exists, and deciding it does not involve any of the core issues that arise in the other LBSF swap adversary proceedings. The Bankruptcy Court is not handling other cases involving whether other swap contracts exist, nor is it familiar with this case, or with the Veyance-LBSF negotiations that will determine whether this swap contract exists.[6]

Finally, LBSF does not dispute that Veyance has validly requested a jury trial. Instead, LBSF argues that this jury trial right does not make withdrawal mandatory. But Veyance does not claim this; Veyance argues only that its right to a jury trial weighs in favor of withdrawal, and here LBSF identifies nothing to counterbalance that weight. (*See* Pl.'s Opening Br. at 10.)[7]

---

[6] In addition, many of LBSF's cases turned on the fact that a mediation procedure existed in the bankruptcy proceeding that could cover the adversary proceeding, which is not the case here. *See Enron N. Am. Corp.*, 2007 WL 102085, at *2; *Holcim, Inc.*, 2004 WL 2149124, at *2; *Enron Power Mktg, Inc.*, 2003 WL 68036, at *10.

[7] The cases LBSF cites do not disagree, but rather find only that other factors not present here outweigh the jury trial factor. For example, in *Formica*, the court held that the jury trial factor was outweighed by the facts that the parties had already briefed a pending motion to dismiss and argued it to the Bankruptcy Court, and that the plaintiff had filed a

9

## REQUEST FOR ORAL ARGUMENT

Veyance respectfully requests oral argument on its Motion to Withdraw the Reference.

## CONCLUSION

For the foregoing reasons, this Court should enter an order withdrawing the reference of the Adversary Proceeding.

Dated: New York, New York
      November 10, 2009

                            **LATHAM & WATKINS LLP**

                            By: /s/ Christopher Harris, Esq.
                                  Christopher Harris, Esq.
                                  885 Third Avenue, Suite 1000
                                  New York, New York  10022
                                  Telephone: (212) 906-1200
                                  Facsimile: (212) 751-4864

                            *Attorneys for Veyance Technologies, Inc.*

---

nearly identical pending proof of claim, which would require resolution of the same issues. *Schneider v. Riddick (In re Formica Corp.)*, 305 B.R. 147, 151-52 (S.D.N.Y 1985). Those factors are notably absent here.